## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------- X

UNITED STATES OF AMERICA,                  :

                  Plaintiff,              :

                         Civil Action No. 07-01346

   v.                                       :

                         Hon. Rosemary M. Collyer

ALL PROPERTY IN/UNDERLYING E-GOLD     :
ACCOUNT NUMBERS:
2636005, 2825136 AND 2828872,            :      ORAL ARGUMENT REQUESTED

              Defendant, and           :

LEGISI HOLDINGS, LLC,                        :

                 Claimant.            :

-------------------------------------------------------- X

## CLAIMANT LEGISI HOLDINGS, LLC'S MOTION
## TO DISMISS VERIFIED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Claimant Legisi Holdings, LLC

("Legisi") moves to dismiss this action. Claimant is entitled to dismissal because the complaint

fails to state a claim for civil forfeiture of all property in/underlying e-gold account numbers:

2636005, 2825136 and 2828872 ("Legisi's accounts"). Claimant further objects to in rem

jurisdiction and venue.

Accompanying this motion is a memorandum of points and authorities. Claimant

respectfully requests oral argument be heard on this motion.

Dated: October 1, 2007

Respectfully Submitted,

PORTER WRIGHT MORRIS & ARTHUR

By:     _William P. McGrath, Jr._ (signature)
William P. McGrath, Jr.
        (DC Bar No. 422160)
1919 Pennsylvania Avenue NW
Suite 500
Washington, DC  20006-3434
Telephone:    202 778-3000
Fax:          202 778-3063

THE ROTH LAW FIRM, PLLC

By:     _Richard A. Roth_ (signature)
Richard A. Roth
545 Fifth Avenue, Suite 960
New York, New York, 10017
Telephone:    212 542-8882
Fax:          212 542-8883

ATTORNEYS FOR CLAIMANT

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------- x

UNITED STATES OF AMERICA,                          :

                          Plaintiff,                       :

                                   Civil Action No. 07-01346

      v.                                              :

                                   Hon. Rosemary M. Collyer

ALL PROPERTY IN/UNDERLYING E-GOLD              :
ACCOUNT NUMBERS:
2636005, 2825136 AND 2828872,                      :   ORAL ARGUMENT REQUESTED

               Defendant, and              :

LEGISI HOLDINGS, LLC,                              :

               Claimant.                   :

---------------------------------------------------------------- x

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAIMANT LEGISI HOLDINGS, LLC'S MOTION TO DISMISS VERIFIED COMPLAINT

### INTRODUCTION

Claimant Legisi Holdings, LLC ("Legisi") is entitled to dismissal because the complaint

fails to state a claim for civil forfeiture of all property in/underlying e-gold account numbers:

2636005, 2825136 and 2828872 ("Legisi's accounts"). Conspicuously absent from the

complaint and incorporated affidavit are *any* factual allegations which, when deemed to be true,

constitute a criminal offense related to Legisi's accounts. Rather, the Government merely states

legal conclusions and, thus, falls far from satisfying the stringent pleading requirements for civil

forfeiture complaints.

According to the Plaintiff United States of America (the "Government"), the e-gold

operation appears to be the "most popular and prominent digital currency available on-line." *See*

3

*Affidavit in Support of Complaint for Forfeiture* (the "Affidavit") ¶ 8. "Digital currency is used

for on-line commerce or for fund transfers between individuals for private purposes." *See*

*Affidavit* ¶ 7. E-gold began offering digital currency in 1996 and was one of the earliest issuers

of digital currency. *See Affidavit* ¶ 8. In December 2005, however, search warrants were

conducted on the e-gold business location and its computer servers. *See Affidavit* ¶ 18.

Thereafter, e-gold provided additional updates of database information. *See Affidavit* ¶ 19.

On or about April 25, 2007 and/or May 4, 2007, seizure warrants were issued authorizing

seizure by federal law enforcement authorities of the property contained in certain e-gold

accounts. *See Complaint* ¶ 5. Specifically, property was seized from 16 accountholders, one of

which is Legisi. *See Affidavit* ¶ 3. In fact, as of March 13, 2007, Legisi's account number

2636005 held more money than any other e-gold account after the e-gold operation's own

accounts. *See Affidavit* ¶ 47. The Government seized a total sum of $1,769,264.19 from

Legisi's accounts. *See Complaint* ¶ 6.

The complaint and incorporated affidavit, however, do not contain *any* factual allegations

which, when deemed to be true, constitute a criminal offense related to Legisi's accounts.

Indeed, the lack of facts is most apparent when compared to the allegations against the other

accountholders. Lolitalist.info's account received funds from individuals for the purchase of

*illegal* child pornography. *See Affidavit* ¶ 29. Maksik's account shows orders for *stolen* credit

card numbers. *See Affidavit* ¶ 36a. Segvec's account had many transfers with Maksik's account,

and the owner of Segvec's account *unlawfully* hacked into other accounts. *See Affidavit* ¶¶ 36c-

e. Miguel Jiminez's account *stole* the identity of an "elderly and infirm man in Florida" and

stopped paying its investors in January 2006. *See Affidavit* ¶¶ 52, 54. E-gold-invest.us

*fraudulently* promised to invest the money in its account, but the account revealed that no

investments were ever made. *See Affidavit* ¶ 78. Phoenix Surf's account *converted* money from

investors, claiming to be the victim of a hacking incident. *See Affidavit* ¶ 96-98.

In stark contrast with the Government's allegations against *all the other accountholders*,

the complaint does not contain *any* factual allegations which, when deemed to be true, support

that Legisi or its accounts were involved in a crime!  For example, the Government does not

allege that Legisi's accounts received money in exchange for contraband.  In addition, it is not

alleged that Legisi stole an identity or another account.  Most significantly, however, the

Government does not allege any facts to show any individual lost any money as a result of

conduct by Legisi or conduct related to Legisi's accounts.  Instead, the Government states legal

conclusions without supporting facts, and, consequently, falls far short from satisfying the

pleading requirements for civil forfeiture complaints.  As such, the verified complaint must be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I.     Standard Of Review

#### A.     Traditional Motion To Dismiss Standard

To prevail on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the

movant must establish that "no plausible inferences can be drawn from the facts alleged that, if

proven, would provide grounds for relief." *Price v. Socialist People's Libyan Arab Jamahiriya*,

294 F.3d 82, 93 (D.C. Cir. 2002).  While "many well-plead complaints are conclusory, the Court

need not accept as true inferences *unsupported by facts* set out in the complaint or legal

conclusions cast as factual allegations." *Rasul v. Rumsfeld*, 414 F. Supp. 2d 26, 30 (D.D.C.

2006)(emphasis added).

**B.    Motion To Dismiss Standard For Civil Forfeiture Complaints**

In addition to the standards to be applied pursuant to Rule 12(b)(6), there is an elevated

pleading standard for civil forfeiture complaints.  The requirements are "more stringent than the

general pleading requirements ... an implicit accommodation to the *drastic nature* of the civil

forfeiture remedy." *United States v. $11,754.23*, 2007 WL 2114670, at *3 (E.D.N.Y. July 16,

2007)(emphasis added).  Forfeiture complaints must comply with Rules E(2)(a) and G of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Rule

E(2)(a) requires the complaint "state the circumstances from which the claim arises with such

particularity that the defendant or claimant will be able, without moving for a more definite

statement, to commence an investigation of the facts and to frame a responsive pleading."

Moreover, Rule G(2)(f) mandates that the complaint state *sufficiently detailed facts* to support a

reasonable belief that the Government will be able to meet its burden of proof (preponderance of

the evidence)[1] at trial.  In addition, "if the Government's theory of forfeiture is that the property

was used to commit or facilitate the commission of a criminal offense or was involved in the

commission of a criminal offense, *the Government shall establish that there was a substantial*

*connection between the property and the offense*."  18 U.S.C. § 983(c)(3)(emphasis added).

Here, the verified complaint states *no facts*, let alone "sufficiently detailed facts," to

support the belief that the Government will be able to sustain its burden.  Indeed, the

Government cannot establish any "connection between the property and the offense," because

the Government does not even allege *any facts* to support that a crime was committed!

---

[1] 18 U.S.C. § 983(c)(1).

## II.    The Complaint

This motion is based exclusively on the facts alleged within the complaint and incorporated affidavit, which, solely for the purpose of this motion, are deemed to be true.  There are four Counts in the complaint.  Count I alleges Legisi's accounts "constitutes or is derived from proceeds traceable to a "specified unlawful activity."" *See Complaint* ¶ 32.  Count II alleges Legisi's accounts were "involved in or is traceable to property involved in money laundering, in violation of 18.U.S.C. §§ 1956(a)(1)(A)(i) and/or 1956(a)(1)(B)(i)." *See Complaint* ¶ 35.  Similarly, Count III alleges Legisi's accounts were involved in "a conspiracy to violate the anti-money laundering statutes." *See Complaint* ¶ 38.  Finally, Count IV alleges Legisi's accounts were "involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960." *See Complaint* ¶ 41.  The complaint itself does not contain any factual allegations about Legisi's accounts.

That said, attached to the complaint is an affidavit which does contain factual allegations about Legisi's accounts.  Where the complaint incorporates an affidavit, the facts in the affidavit may be used to meet the particularity requirement. *United States v. One Parcel of Real Property*, 900 F.2d 470 (1st Cir.1990).  Nonetheless, the affidavit is so lacking in facts about Legisi's accounts that it does not even come close to meeting the heightened pleading standard for forfeiture complaints.  Although the affidavit contains 130 paragraphs, only *four (4) of those paragraphs relate to Legisi's accounts. See Affidavit* ¶¶ 46-49.

All factual allegations in those four paragraphs are set forth below.  Even deeming the allegations therein to be true for the purpose of this motion, the Government falls woefully short of satisfying the pleading requirements.

- "These accounts are used to operate the Legisi pyramid investment scheme, which has been operating since December 2005 via the internet website legisi.com…This scheme offers investors two programs in which

to invest their money, including the "Standard Loan" which has a minimum investment of $250 and no maximum. At the end of the four month term, investors are told they can withdraw their principle investment with 10% a month interest paid, or chose to leave their money in the system and continue to earn 10% a month. The second program offered is the "VIP Loan," in which the minimum investment is $10,000. The term of the investment is for one year, the investor can withdraw their money or leave it in the program and receive a 12.5% monthly return. Legisi also encourages investors to recruit others to invest in the programs by paying a % referral commission on all funds that are put into a new account." *See Affidavit* ¶ 46.

- Regarding account 2636005: "Approximately 11,254.25814 grams ($7,022,258.77) in funds in 1,556 transactions occurred into the account with notations in the memo field such as: "Deposit to www.legisireserve.com User ChuckieM" and "Withdraw to Robert Williams from Legisi.com." The transaction history shows that, while there were some payments out to investors (generally in the tens to hundreds of dollars), the vast majority of funds were simply taken out of the account for use by McKnight." *See Affidavit* ¶ 47.

- Regarding account 2825136: "Approximately 1,315 transactions occur involving the transfer of funds into the account with a value of 7498.626704 grams ($4,699,786.63), and include notations in the memo field such as "Deposit to VIP fund." Most of the funds received into this account, amounting to approximately 5365.237044 grams ($3,385,048.00) were transferred to Legisi's account 2636005." *See Affidavit* ¶ 48.

- Regarding account 2828872: "2828872 received approximately 3724.00066 grams ($2,499,806.00) worth of e-gold from accounts 2636005 and 2825136, both of which were used to receive investor deposits…116 transactions occur into the account with a total weight of 4866,42213 ($3,237,669.14), four of which come from account number 2636005 totaling 3348.77982 grams ($2,240,805.00). Three of the 116 transactions come into the account from e-gold account 2825136 with a weight of 375.22084 grams ($259,001.00). There were approximately 149 transactions out of the account with a total weight of 2208.24154 ($1,374,323.44). The smaller transactions out of the account appear to be payouts to keep investors satisfied, while the larger withdraws are to OmniPay for exchange." *See Affidavit* ¶ 49.

In sum, the affidavit alleges the following: (i) Legisi's accounts are used to operate a pyramid scheme; (ii) several transactions occurred where funds entered Legisi's accounts; (iii) several transactions occurred where funds were transferred between Legisi's accounts; (iv)

8

several transactions occurred where Mr. McKnight, the president of Legisi, withdrew funds from Legisi's accounts; and (v) several transactions occurred where funds were transferred to people other than Mr. McKnight, people who the Government refer to as "investors." What the affidavit, however, does not allege is *any* facts constituting unlawful activity. Rather, the affidavit simply states that a pyramid scheme is occurring. *See Affidavit* ¶ 46. And the complaint itself does not allege any facts whatsoever about Legisi's accounts, but only serves to state the causes of action.

**III.    The Government Fails to Allege A Pyramid Scheme**

In *Miron v. Herbalife Intern., Inc.*, 11 Fed. Appx. 927 (9th Cir. 2001), the Court stated:

> The Mirons assert that "[t]he true facts were that the Herbalife marketing plan was nothing more than a sophisticated pyramid scheme" which caused "an inherent end to Plaintiffs' stream of income." But the Mirons fail to explain why Herbalife's system is a "pyramid scheme," or why it is inherently fraudulent. The Mirons' conclusory statements regarding Herbalife's multi-level marketing business are insufficient to satisfy the requirement for particularity in pleading fraud claims under federal and state law. *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir.1993) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

*Id.* at 930. Thus, the Court held that the district court's dismissal of the claim was proper. *Id.*

Here, similarly, the Government fails to explain why Legisi is a pyramid scheme. In its affidavit, the Government merely alleges that after people invest money, Legisi states they will make a profit from the investment and make money for referring other investors. The Government does not allege any facts which support that the statements by Legisi were false at the time they were made, or that Legisi did not intend to perform the promises at the time they were made. That is the precise reason why the Miron court held dismissal of the claim was proper:

> The Mirons also allege that Herbalife made false statements in distributorship contracts and marketing materials, including representations regarding amassing great wealth and significantly profiting from goals. However, the Mirons fail to explain why the statements complained of were false or misleading...Further, the

> Mirons fail to provide any facts which support that the statements by Herbalife were false at the time they were made, or that Herbalife did not intend to perform the promises at the time they were made.

*Id.* Similarly, although the Government alleges that Legisi promised a high rate of return, the Government fails to explain why that statement was false or unlawful. The Government does not allege *any* facts to show any individual lost any money as a result of conduct by Legisi or conduct related to Legisi's accounts. Put simply, the Government fails to allege facts showing that a crime occurred.

## IV.    Count I Fails To Allege A Specified Unlawful Activity

Count I alleges Legisi's accounts "constitutes or is derived from proceeds traceable to a "specified unlawful activity."" *See Complaint* ¶ 32. The definition of "specified unlawful activity" is provided in 18 U.S.C. § 1956(c)(7).[2] Further, pursuant to 18 U.S.C. § 1956(c)(7)(A),

---

[2] (7) the term "specified unlawful activity" means--
(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;
(B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving--
(i) the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act);
(ii) murder, kidnapping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);
(iii) fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978));
(iv) bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;
(v) smuggling or export control violations involving--
(I) an item controlled on the United States Munitions List established under section 38 of the Arms Export Control Act (22 U.S.C. 2778); or
(II) an item controlled under regulations under the Export Administration Regulations (15 C.F.R. Parts 730-774);
(vi) an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States; or
(vii) trafficking in persons, selling or buying of children, sexual exploitation of children, or transporting, recruiting or harboring a person, including a child, for commercial sex acts;
(C) any act or acts constituting a continuing criminal enterprise, as that term is defined in section 408 of the Controlled Substances Act (21 U.S.C. 848);
(D) an offense under section 32 (relating to the destruction of aircraft), section 37 (relating to violence at international airports), section 115 (relating to influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member), section 152 (relating to concealment of assets; false oaths and claims; bribery), section 175c (relating to the variola virus), section 215 (relating to commissions or gifts for procuring

any act or activity constituting an offense listed in 18 U.S.C. 1961(1)[3] also qualifies as "specified

unlawful activity." This Count, the very first, is clearly the Government's desperate attempt at a

---

loans), section 351 (relating to congressional or Cabinet officer assassination), any of sections 500 through 503
(relating to certain counterfeiting offenses), section 513 (relating to securities of States and private entities), section
541 (relating to goods falsely classified), section 542 (relating to entry of goods by means of false statements),
section 545 (relating to smuggling goods into the United States), section 549 (relating to removing goods from
Customs custody), section 554 (relating to smuggling goods from the United States), section 641 (relating to public
money, property, or records), section 656 (relating to theft, embezzlement, or misapplication by bank officer or
employee), section 657 (relating to lending, credit, and insurance institutions), section 658 (relating to property
mortgaged or pledged to farm credit agencies), section 666 (relating to theft or bribery concerning programs
receiving Federal funds), section 793, 794, or 798 (relating to espionage), section 831 (relating to prohibited
transactions involving nuclear materials), section 844(f) or (i) (relating to destruction by explosives or fire of
Government property or property affecting interstate or foreign commerce), section 875 (relating to interstate
communications), section 922(1) (relating to the unlawful importation of firearms), section 924(n) (relating to
firearms trafficking), section 956 (relating to conspiracy to kill, kidnap, maim, or injure certain property in a foreign
country), section 1005 (relating to fraudulent bank entries), 1006 (relating to fraudulent Federal credit institution
entries), 1007 (relating to fraudulent Federal Deposit Insurance transactions), 1014 (relating to fraudulent loan or
credit applications), section 1030 (relating to computer fraud and abuse), 1032 (relating to concealment of assets
from conservator, receiver, or liquidating agent of financial institution), section 1111 (relating to murder), section
1114 (relating to murder of United States law enforcement officials), section 1116 (relating to murder of foreign
officials, official guests, or internationally protected persons), section 1201 (relating to kidnaping), section 1203
(relating to hostage taking), section 1361 (relating to willful injury of Government property), section 1363 (relating
to destruction of property within the special maritime and territorial jurisdiction), section 1708 (theft from the mail),
section 1751 (relating to Presidential assassination), section 2113 or 2114 (relating to bank and postal robbery and
theft), section 2280 (relating to violence against maritime navigation), section 2281 (relating to violence against
maritime fixed platforms), section 2319 (relating to copyright infringement), section 2320 (relating to trafficking in
counterfeit goods and services), section 2332 (relating to terrorist acts abroad against United States nationals),
section 2332a (relating to use of weapons of mass destruction), section 2332b (relating to international terrorist acts
transcending national boundaries), section 2332g (relating to missile systems designed to destroy aircraft), section
2332h (relating to radiological dispersal devices), section 2339A or 2339B (relating to providing material support to
terrorists), section 2339C (relating to financing of terrorism), or section 2339D (relating to receiving military-type
training from a foreign terrorist organization) of this title, section 46502 of title 49, United States Code, a felony
violation of the Chemical Diversion and Trafficking Act of 1988 (relating to precursor and essential chemicals),
section 590 of the Tariff Act of 1930 (19 U.S.C. 1590) (relating to aviation smuggling), section 422 of the
Controlled Substances Act (relating to transportation of drug paraphernalia), section 38(c) (relating to criminal
violations) of the Arms Export Control Act, section 11 (relating to violations) of the Export Administration Act of
1979, section 206 (relating to penalties) of the International Emergency Economic Powers Act, section 16 (relating
to offenses and punishment) of the Trading with the Enemy Act, any felony violation of section 15 of the Food
Stamp Act of 1977 [7 U.S.C.A. § 2024] (relating to food stamp fraud) involving a quantity of coupons having a
value of not less than $5,000, any violation of section 543(a)(1) of the Housing Act of 1949 [42 U.S.C.A. §
1490s(a)(1)] (relating to equity skimming), any felony violation of the Foreign Agents Registration Act of 1938, any
felony violation of the Foreign Corrupt Practices Act, or section 92 of the Atomic Energy Act of 1954 (42 U.S.C.
2122) (relating to prohibitions governing atomic weapons)
ENVIRONMENTAL CRIMES
(E) a felony violation of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Ocean Dumping Act
(33 U.S.C. 1401 et seq.), the Act to Prevent Pollution from Ships (33 U.S.C. 1901 et seq.), the Safe Drinking Water
Act (42 U.S.C. 300f et seq.), or the Resources Conservation and Recovery Act (42 U.S.C. 6901 et seq.); or
(F) any act or activity constituting an offense involving a Federal health care offense;
(8) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth,
territory, or possession of the United States.

[3] 18 U.S.C. 1961(1) lists the following offenses:

catchall because the definition includes an endless list of offenses ranging from spreading the

variola virus to hostage taking to Presidential assassination to receiving military training from

terrorists to polluting waters to sports bribery to selling biological weapons. Indeed, the

Government does not allege which of these crimes, if any, are related to Legisi's accounts.

---

(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501 (c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b (g)(5)(B).

Rule E(2)(a) requires that a forfeiture complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Certainly claimant cannot be expected to commence an investigation or frame a response to every offense falling under the definition of "specified unlawful activity." By way of instruction, in *United States v. All Assets of Statewide Auto Parts, Inc.*, 789 F. Supp. 537 (E.D.N.Y. 1992), a forfeiture complaint was sufficient when it provided "information so that the claimants know what sort of financial transactions the property was "involved in", the unlawful activity, and the means in which the property was involved in promoting the unlawful activity." *Id.* at 540. That is not the case here.

Count I also does not satisfy Rule G(2)(f), which mandates that the complaint state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof (preponderance of the evidence) at trial. Surely the Court cannot determine whether the Government may be able to meet its burden if it is not aware which "specified unlawful activity" is being alleged.

## IV.    Counts II And III Fail To Allege Money Laundering And Conspiracy

Count II alleges Legisi's accounts were "involved in or is traceable to property involved in money laundering, in violation of 18.U.S.C. §§ 1956(a)(1)(A)(i) and/or 1956(a)(1)(B)(i)." *See Complaint* ¶ 35. Similarly, Count III alleges Legisi's accounts were involved in "a conspiracy to violate the anti-money laundering statutes." *See Complaint* ¶ 38.

18 U.S.C. § 1956(a)(1)(A)(i) prohibits:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
(A)(i) with the intent to promote the carrying on of specified unlawful activity.

13

18 U.S.C. § 1956(a)(1)(B)(i) prohibits:

Whoever, knowing that the property involved in a financial transaction represents
the proceeds of some form of unlawful activity, conducts or attempts to conduct
such a financial transaction which in fact involves the proceeds of specified
unlawful activity--
(B) knowing that the transaction is designed in whole or in part--
(i) to conceal or disguise the nature, the location, the source, the ownership, or the
control of the proceeds of specified unlawful activity.

To allege a violation of 18 U.S.C. § 1956, a plaintiff must plead: (i) the individual

conducted a financial transaction in interstate commerce; (ii) with knowledge that the property

involved in the transaction represented some form of unlawful activity; (iii) with the transaction

in fact involving the proceeds of specified unlawful activity; (iv) with the purpose, in whole or in

part, of concealing or disguising "the nature, the location, the source, the ownership or the

control" of the "illegally acquired proceeds." *United States v. Campbell*, 777 F.Supp. 1259, 1263

(W.D.N.C.1991), *aff'd in part and rev'd in part*, 977 F.2d 854 (4th Cir.1992), *cert. denied*, 507

U.S. 938 (1993). Plaintiffs must plead all essential elements of the offense. *See Ray v. General*

*Motors Acceptance Corp.*, 1995 WL 151852, at *5 (E.D.N.Y. March 28, 1995).

Here, the Government again falls far short of the pleading requirements. Once again, it is

impossible to determine what "specified unlawful activity" is being alleged. Further, the

Government fails to plead even the basic elements of the offense of money laundering. Not only

does the Government neglect to allege what specified unlawful activity resulted in proceeds to

Legisi's accounts, but it also does not allege that there was any effort to conceal or disguise the

nature, location, source, ownership or control of such proceeds. Just as the Government cannot

conclude that a business is a pyramid scheme without supporting facts, the Government cannot

simply conclude a transaction is money laundering without pleading supporting facts. *See*

*Bernstein v. Misk*, 948 F.Supp. 228, 236 n.2 (E.D.N.Y. 1997). In *Bernstein*, the money

laundering count was dismissed. *Id.* The court concluded the count was "so vague" because:

14

> The only allegations in the complaint which pertain to money laundering are the conclusory assertions that Rizk and MDL laundered funds for the enterprise,...and that Rizk omitted to tell Dr. Bernstein that he had done so...The complaint does not describe which defendants or transactions violated this statute or what funds were derived from criminal activity.

*Id.* Here, there are far fewer allegations that pertain to money laundering. There is no allegation that the funds are being laundered for a specific enterprise. There is no allegation of any concealment or omission. And, as in *Bernstein*, the complaint does not describe which transactions violated the statute or what funds were derived from criminal activity.

Finally, Count III, alleging Legisi's accounts were involved in "a conspiracy to violate the anti-money laundering statutes," must also necessarily be dismissed. First, the complaint fails to state a cause of action for money laundering. Second, the complaint fails to allege a conspiracy for the simple reason that there is no allegation that more than one person participated in the alleged offense. To prove conspiracy to commit money laundering, the government must establish: (i) conspiracy, agreement, or understanding to commit money laundering was formed, reached, or entered into by two or more persons; (ii) at some time during existence or life of conspiracy, agreement, or understanding, one of its alleged members knowingly performed one of overt acts charged in indictment in order to further or advance purpose of agreement; and (iii) at some time during existence or life of conspiracy, agreement, or understanding, defendant knew purpose of agreement, and then deliberately joined conspiracy, agreement, or understanding. *U.S. v. Conley*, 37 F.3d 970 (3rd Cir. 1994).

## V.     Count IV Fails To Allege Money Transmitting

Count IV alleges Legisi's accounts were "involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960." *See Complaint* ¶ 41. 18 U.S.C. § 1960(a) prohibits "[w]hoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an

unlicensed money transmitting business." The term "unlicensed money transmitting business" means:

> a money transmitting business which affects interstate or foreign commerce in any manner or degree and--
> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or
> (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

18 U.S.C. § 1960(b)(1). The term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier. 18 U.S.C. § 1960(b)(2).

In addition to the definition in 18 U.S.C. § 1960, "money transmitting business" is defined in 31 U.S.C. § 5330(d)(1). Under 31 U.S.C. § 5330(d)(1), three requirements must be met: First, the business must provide "check cashing, currency exchange, or money transmitting or remittance services." 31 U.S.C. § 5330(d)(1)(A). Second, the business must be required to file reports under § 5313(a) under circumstances that the Secretary may prescribe because it is a "financial institution" within the meaning of that provision. *See* 31 U.S.C. § 5312(a)(2)(R) (defining "financial institution" to include "a licensed sender of money or any other person who engages a business in the transmission of funds, including any person who engages in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institution system.").

16

Third, the business must not be a "depository institution" (as defined in § 5313(g)). 31 U.S.C. § 5330(d)(1)(C).

The complaint does not allege any facts to support that Legisi is a money transmitting business, let alone an "unlicensed" one. Legisi does not transfer funds on behalf of the public by wire, check, draft, facsimile or courier. Nor does the Government allege that. Similarly, the Government does not allege Legisi provided check cashing, currency exchange, or money transmitting or remittance services. Finally, there is no allegation that Legisi is a "financial institution." The complaint merely alleges that e-gold operated a money transmitting business. *See Complaint* ¶ 29. That allegation, however, has no bearing on the present issue (as there is no allegation that *Legisi* is a money transmitting business). For example, the owner of a checking account at a nationwide bank does not fall under this statute merely because the individual's bank is determined to be a money transmitting business. That is precisely what the Government alleges here, and it is woefully deficient.

## CONCLUSION

For the reasons set forth above, Legisi respectfully requests the Court grant Legisi's motion to dismiss this action. Claimant respectfully requests oral argument be heard on this motion.

Dated: October 1, 2007

Respectfully Submitted,


PORTER WRIGHT MORRIS & ARTHUR


By: _____
        William P. McGrath, Jr.
           (DC Bar No. 422160)
        1919 Pennsylvania Avenue NW
        Suite 500
        Washington, DC  20006-3434
        Telephone:    202 778-3000
        Fax:          202 778-3063


THE ROTH LAW FIRM, PLLC


By: _____
        Richard A. Roth
        545 Fifth Avenue, Suite 960
        New York, New York, 10017
        Telephone:    212 542-8882
        Fax:          212 542-8883


ATTORNEYS FOR CLAIMANT

18

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Claimant Legisi Holdings, LLC's Motion to Dismiss the Verified Complaint and the Memorandum of Points and Authorities in Support of Claimant Legisi Holdings, LLC's Motion to Dismiss the Verified Complaint was served this 1st day of October, 2007 via the Court's electronic filing system upon the following counsel:


William Rakestraw Cowden
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
Email: william.cowden@usdoj.gov


_____
William P. McGrath, Jr.