IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  07-1346 (RMC) |
| | ) | |
| ALL PROPERTY IN/UNDERLYING | ) | |
| E-GOLD ACCOUNT NUMBERS: | ) | |
| | ) | |
| 2636005, 2825136 AND 2828872, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF UNITED STATES OF AMERICA'S OPPOSITION
TO CLAIMANT'S MOTION TO DISMISS**

Plaintiff, the United States of America, by its attorney, the United States Attorney for the

District of Columbia, respectfully opposes "Claimant Legisi Holdings, LLC's Motion to Dismiss

the Verified Complaint.

In its motion, Legisi Holdings, LLC ("claimant") maintains that the Court should dismiss

the government's Verified Complaint because it "fails to state a claim for civil forfeiture [.]"

Claimant's Motion at 1.  But, in its supporting memorandum, claimant appears to disavow that

statement by acknowledging that the Verified Complaint does set forth claims for civil forfeiture –

but only against other properties seized from other "accounts" that were subjected to similar civil

forfeiture lawsuits.  According to claimant:  "[i]n stark contrast with the Government's allegations

against *all the other accountholders*, the complaint does not contain *any* factual allegations which,

when deemed true, support that Legisi or its accounts were involved in a crime!"  Claimant's

Memorandum at 5.

Maybe, claimant reads too fast.  In fact, the Verified Complaint sets forth four independent bases for forfeiture of the defendant property, that is, funds that correspond to values once attributed to three e-gold accounts.  In accordance with Supplemental Rule G(2), the Verified Complaint's separately enumerated paragraphs (over one hundred and fifty) set forth "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Claimant may misapprehend how the civil forfeiture law operates, or may seek to postpone defending its conduct on the merits.  In either case, however, its effort to have the Verified Complaint dismissed falls flat.  The government provided adequate facts for claimant to have commenced its own investigation and to have framed a responsive pleading and, therefore, pled this case with sufficient detail.  Claimant's "Motion to Dismiss" should be denied.

## I.    STATEMENT OF FACTS

As summarized in the "Verified Complaint for Forfeiture *In Rem*" ("Verified Complaint"), on or about April 25, 2007 and/or May 4, 2007, federal law enforcement agents executed warrants authorizing seizure of the defendant property, accounted as e-gold, and contained in or reflected as held on deposit in e-gold accounts 2636005, 2825136 and 2828872 (and other properties).  Complaint ¶5.  Law enforcement officers served the warrants at the offices of Gold and Silver Reserve, Inc.  Id.  These warrants required entities operating as the e-gold system – Gold & Silver Reserve, Inc./OmniPay/e-Gold, Ltd. – to convert or exchange the relevant e-gold into funds denominated as United States currency.  Id.  Copies of the seizure warrants were left with Douglas Jackson, or other company officials of Gold & Silver Reserve.  Id.

After the warrants were executed and effectuated, the United States initiated this civil action *in rem*, on July 24, 2007.  The in rem action seeks an order forfeiting the defendant

property to the United States pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).  Id. ¶1.

In paragraph 8 of the Verified Complaint, the government explained that the defendant property previously existed as a value assigned to one or more accounts maintained by the 'E-GOLD' system which operates as a "system for transferring funds through the Internet[.]"  In paragraphs 26 through 30, the government explained how the e-gold operation functions as an unlicensed money transmitting business.

In Count IV of the Verified Complaint, the government indicates that the defendant property (which was seized from the unlicensed e-gold operation, is subject to forfeiture as property involved in that unlicensed money transmission operation.

The government also explained how some of those using the e-gold system, those operating the system, and so-called "digital currency exchangers" conspired to ensure that funds move untraceably or, if traceable to criminal activity, nevertheless continue to move irretrievably through (and out of) the e-gold system.  Id. ¶¶11-12, 22-24.  The government also explained how the e-gold system functions largely like an internet-based *hawala*.  Individuals and entities agree to provide their own real money in exchange for another's e-gold, confident that their e-gold can be transferred to others to fund legal and illegal enterprises and, thereafter, profitably "redeemed" by those others, using so-called "exchangers," for real money.[1]  Id.  The government explained

---

[1]  A "hawala" operates as a remittance system that operates outside of, or parallel to, traditional banking or financial systems.  According to Interpol, it developed in India, before the introduction of western banking practices, and currently functions as a major remittance system around the world.  Hawala systems often are referred to as "underground banking," although they may operate and advertise openly.  See "The Hawala Alternative Remittance System and its Role in Money Laundering," Interpol General Secretariat, (Lyon, France) January 2000 (website: http://www.interpol.int/Public/FinancialCrime/MoneyLaundering/hawala/default.asp ).  See,

that e-gold system users fund the system in order to be able to receive and send money anonymously, instantaneously and irreversibly.  Id. ¶22.  In Count III of the Verified Complaint, the government alleged that the defendant property was forfeitable because was property involved in a conspiracy to launder proceeds of specified unlawful activity.

The government set forth additional facts providing several alternative bases for forfeiting the defendant property.  In the Verified Complaint, the government alleged that claimant used e-gold's money transmission operation (and thus the Internet) while engaging in or conspiring to engage in money laundering.  Verified Complaint ¶ 25.  The Verified Complaint specifically alleges, through paragraphs 42 through 49 of the Affidavit incorporated into the Verified Complaint (at paragraph 25), that numerous promoters of high yield investment programs are operating as pyramid schemes over the Internet and through the e-gold system, and that one such operation, Legisi Holdings, LLC, promised "investors" (that it calls "lenders") *monthly* returns of between 10% and 12.5%.  Affidavit ¶46.   According to the Verified Complaint, Legisi Holdings, LLC described itself as "a private, members -only High Yield Return-on-Loan program," and encouraged "investors" to recruit others to pay into the program by paying a 5% referral commission on all referred funds.  Affidavit ¶46.  According to the Verified Complaint, Legisi's website told "investors" who might be seeking to refer others into the program never to use the terms "investment," "tax," or "guarantee."  Id.  In addition to setting forth facts sufficient to demonstrate the existence of a classic pyramid investment scheme operating as a wire fraud, the

---

e.g., United States v. Dinero Express, 313 F.3d 803, 806-07 (2d Cir. 2002) (international money laundering established through a money remittance hawala-style operation, even though no single step involved the movement of money across the border, because money sent through money remitter in process that began with sum of money in one country and ended with related sum in another country; transfer established though a transaction serving to offset debits and credits).

government explained that the vast majority of the funds appeared to be taken out of the e-gold system, not for use by or to benefit the "investors," but to enrich the individual operating the pyramid scheme.  Id. ¶47.

To capture claimant's own criminal activity as an alternative basis for forfeiture, in Count I of the Verified Complaint the government alleged that the defendant property was forfeitable under 18 U.S.C. § 981(a)(1)(C) because it constituted the proceeds of a "specified unlawful activity" (Legisi Holdings, LLC's wire fraud scheme).  In Count II of the Verified Complaint, the government asserted that the defendant property was forfeitable because it was involved in money laundering.  The government alleged that Legisi Holdings, LLC used the e-gold system to secure and hide the proceeds of its fraud scheme.  See Affidavit ¶¶40, 42, 43, 46-49.

## II.    SUMMARY OF ARGUMENT

In considering claimant's Motion to Dismiss pursuant to Rule 12(b)(6), the Court must consider not only how the standards governing Rule 12(b)(6) of the Federal Rules of Civil Procedure apply, but also application of the standards and procedures set forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000)[2], as codified at 18 U.S.C. §§ 983(a)(3)(D) and 983(c), and the effect of new Rule G of Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, which became effective December 1, 2006.  Upon proper application of the controlling authorities, it is clear that the Verified Complaint in this action suffices and that claimant's motion should be denied.

Moreover, claimant's apparent supposition, that the government misses the mark because claimant did not, itself, operate the e-gold money-transmission system, demonstrates a

---

[2]  CAFRA became effective August 23, 2000.

fundamental misconception of civil forfeiture law.  In *in rem* civil forfeiture actions, property is forfeitable because it was involved in, used to facilitate, or acquired through, criminal activity. Here, the fact that the property at issue was seized from the e-gold system's operators tends to establish that the property was, as alleged, involved in e-gold's unlawful operation.  Whether a particular claimant might qualify as an innocent owner of otherwise forfeitable property is irrelevant to whether the government's forfeiture allegations suffice at this stage of this case.

## III.    GOVERNING LAW

### A.    Rule 12(b)(6)

Earlier this year, in Bell Atlantic v. Twombly, _____ U.S. _____, 127 S. Ct. 1955 (2007), the Supreme Court refocused the analysis of when a plaintiff has alleged facts that can withstand a motion to dismiss and clarified the standards for evaluating whether a complaint satisfies the general rule of pleading:  Fed. R. Civ. P. 8.  In Twombly, the Court held that "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65; that "[f]actual allegations must be enough to raise a right to relief above the speculative level," id.; and that a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief," id. at 1965, n.3.

In so holding, the Supreme Court rejected a literal reading of its earlier statement, in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The Court explained that this "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."  Id. at 1969.  In addition, the

Court stressed that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'" Id. at 1959. Instead, the Court admonished, courts should "tak[e] care to require allegations" that meet the Federal Rules' threshold pleading requirements. Id.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), district courts still must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. See, e.g., Hopkins v. Women's Division, 238 F. Supp.2d 174, 178 (D.D.C. 2002) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957) and Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). But courts need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. Id. (citing Kowal, 16 F.3d at 1276). See also Mansfield v. Billington, 432 F. Supp.2d 64, 69 (D.D.C. 2006) ("While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations") (citing Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004) and Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)). Nor are district courts required to draw argumentative inferences in favor of plaintiffs. See Yamaha Motor Corp. v. United States, 779 F.Supp. 610, 611 (D.D.C. 1991) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1350 at 218 (1990) and Norton v. Larney, 266 U.S. 511 (1925)).

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, and maters of public record. Flynn

v. Tiede Zoeller, 412 F. Supp.2d 46, 50 (D.D.C. 2006) (citing EEOC v. St. Francis Xavier

Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997) and Marshall County Health Care Auth. v.

Shalala, 988 F.2d 1221, 1226, n.6. (D.C. Cir. 1993)).  See also Hopkins v. Women's Division, 238

F. Supp.2d at 178.

### B.      The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and Supplemental Rule G(2) and E(2)(a)

Although a 12(b)(6) motions attack the sufficiency of civil complaints, such motions are

generally reviewed alongside the pleading standards of Fed. R. Civ. P. 8 (or, where applicable,

Rule 9).  But, the pleading standards of the Federal Rules of Civil Procedure do not control civil

forfeiture complaints.  Instead, Section 983(a)(3)(A) of Title 18 provides that a civil forfeiture

complaint must be filed "in the manner set forth in the Supplemental Rules for Admiralty and

Maritime Claims[.]"

Congress modified section 983 when it enacted CAFRA.  In CAFRA, Congress

established a new standard for the burden of proof applicable to civil forfeiture cases.  Now, to

prevail, the government must establish by a "preponderance of the evidence" that the "property is

subject to forfeiture."[3]  Title 18, U.S.C. § 983(c) provides:

> (c)  Burden of proof.–In a suit or action brought under any civil forfeiture statute
> for the civil forfeiture of any property–

---

[3]  Before CAFRA, the government had the initial burden of demonstrating that the
property was subject to forfeiture. To meet this burden, the government was required to
"establish probable cause to believe that a substantial connection exists between the property to
be forfeited and the illegal exchange of a controlled substance." United States v. $67,220.00 in
United States Currency, 957 F.2d 280, 283 (6th Cir. 1992).  The claimant then was required to
come forward with a higher order of proof than required of the government – by a preponderance
of evidence – to defeat a forfeiture claim. U.S. v. Real Property In Section 9, Town 29 North,
Range 1 West, Tp. of Charlton, Otsego County, Mich., 308 F. Supp.2d 791 (E.D. Mich. 2004).

(1)    the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;

(2)    the Government may use evidence gathered ***after the filing of a complaint*** for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and

(3)    if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c) (emphasis added).  Post-CAFRA, claimants retain burdens, too.  Claimants must demonstrate by a preponderance of the evidence that they qualify as innocent owners of forfeitable property (under the statutory definitions of "innocent owner") or must prove some other affirmative defense.  18 U.S.C. § 983(d).

While 18 U.S.C. § 983(c), as amended by CAFRA, raised the ultimate burden of proof for the government in a civil forfeiture proceeding, courts have recognized that CAFRA did not  add any additional burden at the pleading stage.  Indeed, in section 983(c)(2), Congress expressly provided that the government may use evidence gathered after the filing of a forfeiture complaint to meet its burden of proof.  See generally United States v. 630 Ardmore Drive, 178 F. Supp.2d 572, 580 (M.D.N.C. 2001).  "This provision [in § 983(c)(2)] would be meaningless if the government were required to meet the preponderance standard merely to *commence* an action." United States v. Real Property Located at 5208 Los Franciscos Way, 385 F.3d 1187, 1193 (9th Cir. 2004).

Generally, for the non-moving party, a 12(b)(6) motion to dismiss does not present an insurmountable bar to the extent that the movant in order to prevail has to establish that there are no set of facts pled in the non-movant's claim that would allow relief.  In essence, a non-movant can defend by showing that his or her complaint can and has set

forth a set of facts that would allow relief as to the claim asserted. However, CAFRA now appears to require even less as a defense to a 12(b)(6) motion to dismiss to the extent that the statute provides that "no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

630 Ardmore Drive, 178 F. Supp.2d at 580. Adequate evidence, as referred to in the statute, is not defined, but based upon a plain reading of the statute, it is evident that forfeiture claims can advance in the face of 12(b)(6) motions to dismiss even if the government's verified complaints do not provide all the facts that would allow the government to ultimately succeed in the forfeiture proceeding. Id. "Reading the standard set out in 18 U.S.C. § 983(a)(3)(D) in conjunction with the normal standard applied in considering a 12(b)(6) motion to dismiss can only lead one to the conclusion that CAFRA expresses Congress's intention to relax the 12(b)(6) standard of review, albeit only in civil forfeiture proceedings." Id. See also United States v. $78,850.00, 444 F. Supp.2d 630, 640 n.14 (D.S.C. 2006) (noting that a challenge to the sufficiency of the evidence connecting the currency to a crime might be more properly brought after discovery on a motion for summary judgment, as opposed to a motion to dismiss at the initial stages of the case, given the amendments by CAFRA).

In addition to permitting after-acquired evidence to support forfeiture cases, Congress made clear, in section 983(a)(3)(A) of Title 18, that a civil forfeiture complaints are to be filed, not in accordance with Rules 8 and 9 of the Federal Rules of Civil Procedure, but "in the manner set forth in the Supplemental Rules for Admiralty and Maritime Claims[.]" The Supplemental Rules were amended, too, and now include Rule G(2)[4], which sets forth the only standard for

---

[4] Prior to the amendment of the Supplemental Rules, Rule E(2)(a) governed the sufficiency of forfeiture complaints. Rule E(2)(a) requires that the "complaint ... state the circumstances from which the claim arises with such particularity that the defendant or claimant

reviewing the adequacy of asset forfeiture complaints.  Rule G does not adopt the heightened

particularity standard imported into fraud cases by Rule 9.  Nor does it pick up old Rule E's

particularity language.  Instead, Rule G(2)(f) requires that a forfeiture complaint must:

   (a)    be verified;

   (b)    state the grounds for subject-matter jurisdiction, in rem jurisdiction over the
          defendant property and venue;

   (c)    describe the property with reasonable particularity;

   (d)    if the property is tangible, state its location when any seizure occurred and – if
          different – its location when the action is filed;

   (e)    identify the statute under which the forfeiture action is brought; and

   (f)    state sufficiently detailed facts to support a reasonable belief that the government
          will be able to meet its burden of proof at trial.

Supplemental Rule G(2).

       In enacting new Rule G, Congress explained that the "reasonable belief" standard in Rule

G(2)(f) was intended to set forth the same standard for sufficiency of a complaint that the fourth

Circuit adopted in United States v. Mondragon, 313 F.3d 862 (4th Cir. 2002), when the court there

had been reviewing the sufficiency of civil forfeiture complaint alongside the previously

applicable Supplemental Rule E.  See Advisory Committee Notes, 2006 Adoption, Rule G,

*Subdivision (2)* (2006); United States v. $50,040, No. 06-04552, 2007 WL 1176631 (N.D.Cal.

_____

will be able, without moving for a more definite statement, to commence an investigation of the
facts and to frame a responsive pleading."  However, the Supplemental Rules were amended, in
December 2006, to reflect that Rule G now governs civil forfeitures.  The Advisory Committee
Notes to Rule G(2)(f) state that new Rule G(2)(f) reflects how Rule E(2)(a)'s particularity
standard "evolved to the standard stated in subdivision (2)(f)" of Rule G and that Rule G is
meant to carry forward the interpretation of the pleading standard that the Fourth Circuit adopted
in United States v. Mondragon, 313 F.3d 862 (4th Cir. 2002), "without change."  Indeed, as
explained above, Congress incorporated the Fourth Circuit's language as the rule.

2007) (the first judicial interpretation of Rule G(2)).  In fact, Congress parroted the Fourth

Circuit's language for explaining what should suffice for commencing a forfeiture case when

Congress wrote Rule G(2)(f).  In <u>Mondragon</u>, the court had held that "[t]he  complaint must state

sufficiently detailed facts to support a reasonable belief that the government will be able to meet

its burden of proof at trial."  <u>Mondragon</u>, 313 F.3d at 865 (citing <u>United States v. $38,000 in

United States Currency,</u> 816 F.2d 1538, 1548 (11th Cir. 1987)).  Congress, last year, agreed.

 Because Congress intended Rule G to codify what <u>Mondragon</u> held, the facts the Fourth

Circuit found adequate in <u>Mondragon</u> are suggestive of the level of detail Congress intended Rule

G to impose.  <u>Mondragon</u> held that a complaint alleging drug proceeds provided sufficient

information to support continuation of a forfeiture action because the complaint:  (1) identified

how much currency was seized; (2) how it was packaged; (3) when it was seized; (4) where it was

seized; (5) by whom it was seized; (6) that it was a large sum of currency found in unusual

packaging; (7) that a hidden compartment was used to store the currency, and (8) that the drug dog

alerted in the area of the car near the hidden compartment.  <u>Mondragon</u> held that these factual

allegations permitted a reasonable belief – for pleading purposes – that the currency constituted

proceeds of drug trafficking and was, therefore, subject to forfeiture.  The court held that the

complaint stated the circumstances giving rise to the forfeiture claim with sufficient particularity

for Mondragon to commence a meaningful investigation of the facts and draft a responsive

pleading – even where the complaint contained no information about specific drug transactions

from which the currency might have been obtained.

## IV. <u>ARGUMENT</u>

 Like formerly applicable Rule E(2), Rule G's provisions were "designed to let the

claimant respond without further procedural maneuvering by saving him the inconvenience of filing a motion for a more definite statement."  630 Ardmore Drive, 178 F. Supp.2d at 581 (internal quotations and citations omitted) (interpreting E(2)); Advisory Committee Notes, 2006 Adoption, Rule G, *Subdivision (2)* (2006).  In this case, the government provided claimant with ample facts with which to commence an investigation and to frame a responsive pleading.

Likewise, Verified Complaint states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  Consistent with Mondragon, the government described:  (1) the property seized (¶4); (2) who seized the property (¶5); (3) when it was seized (¶5); (4) where it was seized (¶5); (5) how the property was seized, and from whom (¶5); (6) the value of the seized property (¶6); (7) the custodial agent of the seized property; and (8) several independent legal bases, further detailed below, that support the seizure and forfeiture of the defendant property (¶¶33, 36, 39,41).

Proceeds of a Fraud Scheme (Pyramid)

Claimant's opening argument quoting an irrelevant Rule 9(b) case as support for its allegation that "The Government Fails to Allege a Pyramid Scheme."  But then – in apparent recognition of the fact that the government did allege that Legisi operated as a pyramid scheme – claimant instead protests that "the Government fails to explain why Legisi is a pyramid scheme." (Emphasis added.)  Specifically, says claimant, the government should have said "that Legisi did not intend to perform the promises at the time they were made."  But, intent to defraud is what the government has pled.  According to the Verified Complaint, claimant promised third-parties impossibly high monthly rate of returns – not including a promise to return 5% on any other's funds that were referred to Legisi.  Meanwhile, claimant appears only to have paid a few

13

"investors" off with enough money to keep-up the illusion, and thereby to keep growing the base. It is hardly a reach to infer that when claimant promised to deliver the moon, it knew it would not. See United States v. Seventy-Nine Thousand Three Hundred Twenty-One Dollars ($79,321.00) in United States Currency, __ F. Supp.2d __, 2007 WL 3277298, *8 (D.D.C., November 07, 2007) (NO. CIV.A.05-1364 (RBW) (pre-Rule G forfeiture complaint also satisfied Rule E's standard by "alleging facts which support an inference of the requisite intent").

Claimant also protests that the Verified Complaint does not provide adequate indication of the particular "specified unlawful activity" from which the defendant property is alleged to have derived. But Rule G imposes only a requirement that a forfeiture complaint "identify the statute under which the forfeiture action is brought" which the Verified Complaint plainly does here – at the beginning, and at the end. See ¶¶1, 33, 36, 39, 41.[5] In any event, discerning a wire fraud scheme from the Verified Complaint's factual allegations would not be rocket science even if the Affidavit had not – just before describing claimant's operations – explicitly stated: "Wire Fraud (Investment Scams)." See Affidavit, after ¶36. The government asserts that Legisi (and others) used the Internet-based e-gold system to secure and then launder proceeds of schemes to defraud numerous third-parties. Although using the e-gold system may be novel, the fraud scheme is not. Rule E required an allegation of circumstances giving rise to a forfeiture, not that a forfeiture

---

[5] It is of particular significance that new Rule G(2)(e) now requires that the complaint "identify the statute under which the forfeiture action is brought." Rule G(2)(e). In contrast, the former Rule C(2)(d)(iii) required that the complaint state "all allegations required by the statute under which the action is brought." Rule G's elimination of a reference to "all allegations" was designed to obviate the necessity that the government allege in its complaint each element of each offense giving rise to the forfeiture and eliminate disputes over whether the complaint included enough allegations of facts that, if true, would sustain the elements at a trial. "[T]he government is not required to prove its case simply to get in the courthouse door." Real Property Located at 5208 Los Franciscos Way, 385 F.3d at 1193.

complaint link allegations specifically to each element of each alternative ground for forfeiture.

See United States v. $49,000.00, 330 F.3d 371, 376 (5ᵗʰ Cir. 2003) (interpreting Rule E and citing

Mondragon) (government need not prove elements of crimes supporting forfeiture at the pleading

stage; rule requires only facts sufficient to support a reasonable belief that government will bear

its burden at trial to prove such elements).

Last, to the extent claimant means to assert that the government's case should be

dismissed because the government forgot to allege that another individual actually lost money,

actual loss is irrelevant to the existence of a wire fraud scheme. See, e.g., United States v.

Vincent, 416 F.3d 593, 600-601 (7th Cir. 2005) (government not obligated to prove that victim

lost all, or even portion, of entrusted money) (citing United States v. Dick, 744 F.2d 546, 550 (7th

Cir.1984) (proof of pecuniary loss is not an element of mail fraud); United States v. Ashman, 979

F.2d 469, 478 (7th Cir.1992) (same for wire fraud)); United States v. Sokolow, 91 F.3d 396, 406

(3d Cir. 1996) ("In general, to satisfy the elements for mail fraud, proof of actual loss by the

intended victim is not necessary.") (citing United States v. Copple, 24 F.3d 535, 544 (3d Cir.),

cert. denied, 513 U.S. 989 (1994)) (bracket and internal quotation marks omitted).

### Property Involved In Money Laundering

As alternative bases for forfeiture of the defendant property, the government asserts that

the property at issue in this case was involved in money laundering or in conspiracy to launder

money. The Verified Complaint, again, details how funds move, anonymously, into, through and

out of the e-gold system through agreements between the operators and the account holders and

agreements between the account holders and the exchangers. See Verified Complaint ¶¶16, 17,

18. As the government explained, no person moves value into or out of the e-gold system except

through agreements with exchangers and e-gold has been favored as a means of securing

investment fraud proceeds "because of a user's ability to operate accounts anonymously, and e-

gold's policy of making all transfers of e-gold irrevocable and not subject to reversal."  Affidavit

¶¶9, 10, 11, 12, 13, 40.

Property Involved In Unlicensed Money Transmission

Claimant concludes its memorandum by asserting that although "[t]he complaint . . .

alleges that e-gold operated a money transmitting business[, t]hat allegation . . . has no bearing on

the present issue (as there is no allegation that Legisi is an money transmitting business)."

Memorandum at 17.  But, this statement reflects another misperception of forfeiture law.  One's

property may become forfeitable because of how someone else uses it; the property owner need

not be "involved in" the criminal activity that supports a forfeiture.  Thus, for example, when one

provides funds to an unlicensed money remitter, the funds to be moved constitute "property

involved in" a 1960 violation – regardless of whether the funds are forfeitable as criminally-

derived proceeds, too.  See, e.g., United States v. Cambio Exacto, S.A., 166 F.3d 522, 528 (2d

Cir. 1999) (money transmitter case).  If the funds are criminally derived, however, the property

also may be forfeitable as property involved in money laundering, and as property constituting or

traceable to criminal proceeds.  In this case, because of how the e-gold system operates, and

because of what claimant used the system to do, all of these bases for forfeiture of the defendant

property are alleged to exist.

Claimant's parting shot begs the question "Whose owns the defendant property?"

Although claimant has asserted an interest in the defendant property by filing a verified claim, the

government here seized an amount of e-gold from the operators of the e-gold system and then

16

required those operators to convert (or "out-exchange," using e-gold's venacular) the e-gold to U.S. dollars. In other words, the defendant property came from those operating the e-gold system, not from claimant.

At the pleading stage, a verified claim of ownership may suffice to establish standing to contest a forfeiture. See, e.g., United States v. $148,840.00 in U.S. Currency, 485 F. Supp.2d 1254, 1258 (D.N.M. 2007). But, it remains to be determined whether those who used the e-gold system to transfer funds still retained title to their money and just what those who held e-gold really owned. See, e.g., United States v. All Funds on Deposit ... in the Name of Kahn, 955 F. Supp. 23, 27 (E.D.N.Y 1997) (customers who gave a money transmitter money to transfer to relatives in Pakistan lacked standing to contest forfeiture of transmitter's bank accounts because they had transferred title to the money to the money transmitter in much the same way as a depositor transfers title to his money to his bank when he makes a deposit); United States v. 47 10-Ounce Gold Bars, 2005 WL 221259, at *4 (D. Or. 2005) (following Kahn; customers who sent money to broker to buy gold and silver, allowing broker to maintain the gold and silver in its inventory, lacked standing to contest forfeiture of specific gold bars); United States v. One 1993 Ford Thunderbird, 2000 WL 1154628, at *5 (N.D. Ill. 2000) (account holder lacks standing to contest the forfeiture of the portion of bank account traceable to deposit made by third party which claimant admits did not involve her own funds); United States v. $61,483.00 in U.S. Currency, 2003 WL 1566553, at *3 (W.D. Tex. 2003) (a bailor has standing to contest a forfeiture of the bailed funds, but he must establish that the elements of bailment under state law have been satisfied); United States v. $79,000 in Account Number 2168050/6749900, 1996 WL 648934, at *6 (S.D.N.Y. 1996) (bailor has standing to contest forfeiture of funds from bailee only if valid

17

bailment was created under state law).

## V.    <u>Conclusion</u>

For the foregoing reasons, the United States respectfully submits that this Court should

deny claimant's Motion to Dismiss.  A proposed Order is attached for the Court's utilization.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:    /s/
WILLIAM R. COWDEN
Assistant United States Attorney
D.C. Bar No. 426301
LAUREL LOOMIS RIMON
Senior Trial Attorney, Department of Justice
555 Fourth Street, NW, Room 4824
Washington, DC 20530
(202) 307-0258
william.cowden@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused a copy of the foregoing Opposition to be sent through
the Court's ECF system to claimant's counsel of record on this   13th   day of November, 2007.

/s/
WILLIAM R. COWDEN
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  07-1346 (RMC)** |
| | ) | |
| **ALL PROPERTY IN/UNDERLYING** | ) | |
| **E-GOLD ACCOUNT NUMBERS:** | ) | |
| | ) | |
| **2636005, 2825136 AND 2828872,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**O R D E R**

Upon consideration of claimant's Motion to Dismiss the Complaint, the Opposition thereto, and the entire record herein, it is this _____ day of _____, 2007

HEREBY Ordered that claimant's Motion to Dismiss is DENIED.

_____
Rosemary M. Collyer
United States District Judge