UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------- x

UNITED STATES OF AMERICA,

                Plaintiff,

                Civil Action No. 07-01346

v.

                Hon. Rosemary M. Collyer

ALL PROPERTY IN/UNDERLYING E-GOLD
ACCOUNT NUMBERS:
2636005, 2825136 AND 2828872,            ORAL ARGUMENT REQUESTED

                Defendant, and

LEGISI HOLDINGS, LLC,

                Claimant.

---------------------------------------------------------- x

**CLAIMANT LEGISI HOLDINGS, LLC'S REPLY
TO PLAINTIFF UNITED STATES OF AMERICA'S OPPOSITION
TO CLAIMANT'S MOTION TO DISMISS**

Claimant Legisi Holdings, LLC ("Legisi"), by its attorneys, The Roth Law Firm, PLLC, respectfully replies to Plaintiff United States of America's ("Government") "Opposition to Claimant's Motion to Dismiss."

I.    **The Government Misleads The Court Three Times With Legal Inaccuracies**

As a threshold matter, it is necessary to alert the Court to three legal inaccuracies presented in the Government's Opposition to Claimant's Motion to Dismiss ("Opposition"): (1) that the Government does not need to allege facts to satisfy each element of each cause of action; (2) that Legisi has a burden to prove its innocence to prevail on its motion to dismiss; and (3) that the Complaint against Legisi's personal property is sufficient if it merely states a claim against E-gold's property. Each error will be corrected in turn.

### A.  The Government Must Allege Facts To Satisfy Each Element Of Each Cause Of Action

The Government correctly states that Rule C(2)(d)(iii) was replaced by Rule G(2)(e). The Government misleads the Court, however, with its *guess at the rationale* for the replacement. Specifically, the Government writes:

> It is of particular significance that new Rule G(2)(e) now requires that the complaint identify the statute under which the forfeiture action is brought. Rule G(2)(e). In contrast, the former Rule C(2)(d)(iii) required that the complaint state "all allegations required by the statute under which the action is brought." Rule G's elimination of a reference to "all allegations" *was designed to obviate the necessity that the government allege in its complaint each element of each offense giving rise to the forfeiture...*

Opposition to Claimant's Motion to Dismiss ("Opposition") at 14. (emphasis added).

Although convenient for the Government, its reasoning is deeply flawed. It is a basic principle that "[i]n order to state a claim, and thereby survive a Rule 12(b)(6) motion to dismiss, a complaint must contain... *allegations sufficient to state all elements of a cause of action.*" *M.K. v. Tenet*, 99 F.Supp.2d 12, 23 (D.D.C. 2000). Complaints cannot merely state legal conclusions. *See Rasul v. Rumsfeld*, 414 F. Supp. 2d 26, 30 (D.D.C. 2006)(stating that " the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations").

New Rule G(2)(e), by requiring that the complaint identify the statute, does not *"obviate the necessity that the government allege in its complaint each element of each offense."* To the contrary, Rule G(2)(e) makes the pleading requirements for forfeiture complaints *more stringent*. *See United States v. $11,754.23*, 2007 WL 2114670, at *3 (E.D.N.Y. July 16, 2007)(defining the pleading standard for civil forfeiture complaints as "stringent"). Now, in addition to pleading facts to support each element of each offense, *the Government must identify the statute as well.*

2

In sum, the Government's faulty rationale has led it to draft an insufficient complaint, which the Court must dismiss.

### B. Legisi Does Not Have A Burden To Prove Its Innocence To Prevail On Its Motion To Dismiss

The Government will also have the Court believe that in order for Legisi to prevail on its motion to dismiss, it must prove its innocence. Specifically, the Government alerts the Court, "Post-CAFRA, claimants retain burdens, too. Claimants must demonstrate by a preponderance of the evidence that they qualify as innocent owners of forfeitable property..." Opposition at 9.

The Government's statement is deceptive because that burden is irrelevant at this stage. 18 U.S.C. § 983(d), titled "Innocent owner defense," (presumably what the Government is referencing) *provides an affirmative defense*. As with most affirmative defenses, it is true that the defendant bears the burden of proof. That burden, however, has nothing to do with a *plaintiff's initial burden to state a claim* in the complaint. The Court must not succumb to the Government's diversionary tactic. There is currently *no burden on Legisi to prove anything.*

### C. The Complaint Against Legisi's Personal Property Is Insufficient If It Merely States A Claim Against E-Gold's Property

Finally, perhaps acknowledging the fatal lack of facts alleged about Legisi's accounts in its Complaint,[1] the Government states in its "Summary of Argument" that "the fact that the property at issue was seized from the E-gold's system's operators tends to establish that the property was, as alleged, involved in E-gold's unlawful operation." Opposition at 6. In other words, the Government takes the position that because E-gold allegedly acted unlawfully,

---

[1] The Complaint itself does not contain *any factual allegations* about Legisi's accounts. The incorporated affidavit, however, contains 130 paragraphs, but only four of those paragraphs relate to Legisi's accounts. Affidavit in Support of Complaint for Forfeiture (the "Affidavit") ¶¶ 46-49.

3

Legisi's accounts are subject to forfeiture *even if no connection is alleged* between Legisi's personal property and any alleged "unlawful operation."

The Government's position turns forfeiture law on its head. 18 U.S.C. § 983(c)(3) provides:

> [I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense or was involved in the commission of a criminal offense, *the Government shall establish that there was a substantial connection between the property and the offense.*

*Id.* (emphasis added).

Merely holding an account with a company involved in alleged unlawful activities cannot satisfy the "substantial connection" requirement. By way of example, all Wachovia accountholders do not forfeit their accounts if Wachovia acts unlawfully. Rather, as stated in the statute, *the specific property in the account must be substantially connected to the offense.* Therefore, contrary to the Government's argument, Legisi's property is not subject to forfeiture merely because it was "seized from E-gold's operators."

Further, curiously, the Government *did not seize the accounts of all E-gold accountholders*. Only 16 accountholders were targeted. Affidavit in Support of Complaint for Forfeiture (the "Affidavit") ¶ 3. In fact, a visit to www.e-gold.com demonstrates that the company is up and running. The reason that the Government chose Legisi's accounts is obvious. As of March 13, 2007, Legisi's account number 2636005 held more money than any other E-gold account after the operation's own accounts. Affidavit ¶ 47. Nonetheless, this Court must hold the Government to the standard that the law requires.

## II. The Government Failed To Meet The Heightened Pleading Standard Because It Did Not Allege Facts Connecting Legisi's Property To A Crime

The pleading standard for civil forfeiture complaints is "more stringent than the general pleading requirements." *United States v. $11,754.23*, 2007 WL 2114670, at *3. Nonetheless, the Government makes a point of explaining to the Court "that forfeiture claims can advance in the face of 12(b)(6) motions to dismiss even if the government's verified complaints do not provide all the facts that would allow the government to ultimately succeed in the forfeiture proceeding." Opposition at 10. However, is that not always the case? In other words, a complaint never needs to state all the facts that would lead to ultimate success at trial.

Nonetheless, at a minimum, *a complaint must state some facts*. Indeed, under Rule E(2)(a), civil forfeiture complaints must state the circumstances from which the claim arises with *such particularity* that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading. Moreover, Rule G(2)(f) mandates that the complaint state *sufficiently detailed facts* to support a reasonable belief that the Government will be able to meet its burden of proof.[2]

The question turns to what qualifies as *such particularity* and *sufficiently detailed facts*. The Government correctly asserts that Congress intended Rule G to codify *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002). As such, "the facts the Fourth Circuit found adequate in *Mondragon* are suggestive of the level of detail Congress intended Rule G to impose." Opposition at 12. The Government, however, falls woefully short of meeting the level of detail

---

[2] The Government was able to find a footnote in a case (which cites another footnote) that dealt with the *sufficiency of evidence* in a civil forfeiture case. Specifically, the Government wrote: "*See also United States v. $78,850.00*, 444 F. Supp.2d 630, 640 n.14 (D.S.C. 2006)(noting that *a challenge to the sufficiency of the evidence* connecting the currency to the crime might be more properly brought after discovery on a motion for summary judgment, as opposed to a motion to dismiss at the initial stages of the case, given the amendments by CAFRA)." Opposition at 10. (emphasis added). Here, however, at this stage of the case, *the Court is not asked to weigh any evidence.*

5

of the complaint in *Mondragon*. And upon analyzing each crime alleged in the Government's Complaint, it becomes clear that the Government has not stated sufficient facts to connect Legisi's property to a conspiracy to commit money laundering (Count III), unlicensed money transmitting business (Count IV), pyramid scheme, specified unlawful activity (Count I), or money laundering (Count II).

### A.  The Government's Complaint Is Not Nearly As Detailed As The *Mondragon* Complaint

*Mondragon* began its analysis by listing five facts that "*do not, by themselves, show a sufficient connection between the currency and drug trafficking to satisfy the pleading requirement...*" *Mondragon*, 313 F.3d at 866. (emphasis added). Specifically, the insufficient facts were: "(1) what currency was seized, (2) how it was packaged, (3) when it was seized, (4) where it was seized, and (5) by whom it was seized." *Id.* Similarly, in the present case, the Government's Complaint described: "(1) the property seized (¶4); (2) who seized the property (¶5); (3) when it was seized (¶5); (4) where it was seized (¶5); (5) how the property was seized, and from whom (¶5); (6) the value of the seized property (¶6); (7) the custodial agent of the seized property." Opposition at 13. *Those are the same facts that Mondragon held did not, by themselves, satisfy the pleading requirement.* Therefore, the seven factors are not enough.

According to the Government's Opposition, the Government's Complaint described only one additional factor: "(8) several independent legal bases, further detailed below, that support the seizure and forfeiture of the defendant property (¶¶33, 36, 39, 41). *Id.* Presumably, the Government did not actually mean "several independent legal bases," as it is well settled that complaints cannot merely state legal conclusions. *See Rasul*, 414 F. Supp. 2d at 30. That being said, the Government's misstatement is not entirely surprising, given its belief, elaborated upon above, that its Complaint only need state the statutory provision *rather than facts* to satisfy each

6

element of each cause of action.

*Mondragon* held that the complaint did meet the particularity requirements because of its detailed factual allegations. *Mondragon*, 313 F.3d at 867. Specifically, in *Mondragon*:

> The complaint alleges that Sergeant Quill, in his search of the car driven by Mondragon, found nearly one-half million dollars sealed in fifteen plastic bags. The presence of that much cash, oddly packaged, could raise a suspicion that someone was up to no good, but without more it does not suggest a connection to drug trafficking. There is more, of course. The complaint alleges that Sergeant Quill found the money hidden in a professionally constructed secret compartment behind the back seat of the car. The sergeant, according to the complaint, was experienced in drug investigations and knew that these hidden compartments were routinely used by drug traffickers to transport both drugs and cash proceeds. Finally, the complaint alleges that the drug dog alerted to the back seat area of the car, signaling the scent of illegal drug residue.

*Id.* at 866. In the present case, the Government contends that its Complaint is "[c]onsistent with *Mondragon*." Opposition at 13.

The Government's Complaint, however, could not be further from the complaint in *Mondragon*. The Affidavit which is incorporated by reference into the Complaint only alleges the following: (i) Legisi's accounts are used to operate a pyramid scheme; (ii) several transactions occurred where funds entered Legisi's accounts; (iii) several transactions occurred where funds were transferred between Legisi's accounts; (iv) several transactions occurred where Mr. McKnight, the president of Legisi, withdrew funds from Legisi's accounts; and (v) several transactions occurred where funds were transferred to people other than McKnight, people who the Government refer to as "investors." Affidavit ¶¶ 46-49. Considering *Mondragon*, where the court stated that nearly one-half million dollars sealed in plastic bags was, by itself, not enough, surely the Government's meager allegations in the present case fail.

Moreover, the allegations in the present case pale in comparison to a professional secret compartment and an alerted drug dog. The Courts of Appeals for the Second, Fourth, Ninth and

7

Eleventh Circuits have found that the most compelling case for forfeiture are those situations, like in *Mondragon*, where law enforcement officers discover the property in close proximity to narcotics or drug paraphernalia. *See United States v. Residence at 3097*, 921 F.2d 1551, 1552 (11th Cir.1991); *United States v. $95, 945.18*, 913 F.2d 1106, 1107 (4th Cir.1990); *United States v. Padilla*, 888 F.2d 642, 644-45 (9th Cir.1989); *United States v. $2,500*, 689 F.2d 10, 12 (2nd Cir.1982). In sum, as elaborated upon below, the Complaint must be dismissed because the Government has failed to state facts connecting Legisi's accounts to a crime.

### B. The Government Fails To Allege Conspiracy To Commit Money Laundering

In Legisi's Motion to Dismiss, it cites case law stating that *to allege a conspiracy to commit money laundering*, it is *necessary to allege that two or more persons are involved. See U.S. v. Conley*, 37 F.3d 970 (3rd Cir. 1994)(reciting the elements of a conspiracy to commit money laundering). The Government does not allege that two or more persons were involved. And its Opposition, similarly, the Government does not address that argument or allude to another person or entity that allegedly conspired with Legisi. Thus, Count III must summarily be dismissed.

### C. The Government Fails to Allege Unlicensed Money Transmitting Business

In Legisi's Motion to Dismiss, it argues that Legisi cannot be considered a "money transmitting business" under 18 U.S.C. § 1960 or 31 U.S.C. § 5330(d)(1) because the Complaint does not allege that Legisi transfers funds on behalf of the public by wire, check, draft, facsimile or courier. Similarly, the Government does not allege Legisi provided check cashing, currency exchange, or money transmitting or remittance services. Finally, there is no allegation that Legisi is a "financial institution." In its Opposition, *the Government does not present any*

*argument that Legisi is a money transmitting business.* Rather, the Government takes the position that Legisi's property is forfeitable because E-gold allegedly operated a money transmitting business. As previously discussed, that begs the question why did the Government *not seize the accounts of all E-gold accountholders?*

The Court need only read the mysterious authority cited by the Government to realize the Government's position is without merit. In its Opposition, the Government cites *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 528 for the proposition that "when one provides funds to an unlicensed money remitter, the funds to be moved constitute "property involved in" a 1960 violation – regardless of whether the funds are forfeitable as criminally derived proceeds, too." Opposition at 16. Put simply, the *Cambio* case does not say that. First, there, the money transmitters were licensed. *Cambio*, 166 F.3d at 524. Second, there was no allegation of a 1960 violation (unlicensed money transmitting business). *Id.* Rather, in *Cambio*:

> The complaint alleges that the defendant funds therefore constitute property involved in and proceeds traceable to transactions or attempted transactions in violation of 18 U.S.C. §§ 981, 984, 1956 and 1957 (money laundering), and proceeds traceable to violations of 21 U.S.C. § 841 et seq. (controlled substances) and 31 U.S.C. 5324 (structuring), and are therefore subject to forfeiture...

*Id.* In sum, because the Government seemingly does not allege that Legisi is a money transmitting business, and it has not presented authority that allows for forfeiture of all funds in any way connected to an unlicensed money transmitting business, assuming that E-gold is one, Count IV must be dismissed.

### D.     The Government Fails to Allege A Pyramid Scheme[3]

In its Opposition, the Government criticizes the case *Miron v. Herbalife Intern, Inc.*, 11

---

[3] Legisi addresses this cause of action out of an abundance of caution, even though it is unclear if the Government is alleging this cause of action because it is not included as a Count in the Government's Complaint.

9

Fed. Appx. 927 (9th Cir. 2001) as an "irrelevant Rule 9(b) [Fraud] case." Opposition at 13. Only sentences later, however, the Government apparently backtracks, stating that "intent to defraud is what the government has pled." *Id.* The Government claims that it pled intent to defraud because its Complaint states that Legisi "promised third-parties impossibly high monthly rate of returns." *Id.* The Government continues, "It is hardly a reach to infer that when claimant promised to deliver the moon, it knew it would not." *Id.* at 14.

Regardless of the Government's opinion of Legisi's promises as impossible or equivalent to delivering the moon, the Government fails to allege a pyramid scheme because it fails to allege intent to defraud. By way of example, in *Miron*, the court dismissed the claim that Herbalife was operating a fraudulent pyramid scheme, even though the plaintiff alleged that "Herbalife made false statements in distributorship contracts and marketing materials, *including representations regarding amassing great wealth and significantly profiting from goals.*" *Miron v. Herbalife Intern, Inc.*, 11 Fed. Appx. at 930. (emphasis added).

Ultimately, the *Miron* court dismissed the claim because the plaintiffs failed to explain "why the statements complained of were false or misleading." *Id.* Surely, it would have been insufficient for the plaintiffs to answer that inquiry by alleging that Herbalife's promises were impossible or equivalent to delivering the moon, as the Government attempts to do here. The Government's opinion, like the opinion of the plaintiffs in *Miron*, is irrelevant and creates a slippery and subjective standard. Rather, allegations that promises are false or misleading must be based on facts. Thus, the Government fails to allege a pyramid scheme because it does not allege intent to defraud.

### E. The Government Fails to Allege A Specified Unlawful Activity

In Legisi's Motion to Dismiss, it points to the broad definition of "specified unlawful

activity," which includes offenses ranging from spreading the variola virus to hostage taking to Presidential assassination to receiving military training from terrorists to polluting waters to sports bribery to selling biological weapons. In its Opposition, the Government scolded, "discerning a wire fraud scheme from the Verified Complaint's factual allegations would not be rocket science." Rather than respond in similar offensive fashion, suffice it to say that the Government falls short of alleging wire fraud because intent to defraud is one of the elements of wire fraud. *United States v. Vincent*, 416 F.3d 593, 600 (7th Cir. 2005). Thus, the Government fails to allege the requisite intent to defraud for both a pyramid scheme and wire fraud. Perhaps a rocket scientist would have chosen to allege another offense included under the broad definition of "specified unlawful activity." And while the Government correctly notes that it is not necessary to plead actual loss to allege wire fraud, it is necessary to plead intent. Because the Government has not done so, Count I must be dismissed.

### F.    The Government Fails to Allege Money Laundering

In Legisi's Motion to Dismiss, it cites case law stating that to allege money laundering, it is necessary to allege an effort to conceal or disguise the nature, location, source, ownership or control of such proceeds. *See United States v. Campbell*, 777 F.Supp. 1259, 1263 (W.D.N.C. 1991), *aff'd in part and rev'd in part*, 977 F.2d 854 (4th Cir. 1992), *cert. denied*, 507 U.S. 938 (1993) (reciting the elements of money laundering). In its Opposition, the Government claims that this element is satisfied because of two reasons given in its Complaint: (i) E-gold accountholders can have anonymous accounts and (ii) E-gold transfers are not subject to reversal. Opposition at 16. These allegations, however, *do not support the allegation that Legisi made an effort to conceal anything*. To the contrary, the Government explains in the Affidavit that "investors...invest their money" by depositing money into Legisi's accounts. Affidavit §§ 46, 49. That implies that the investors know their money is going to Legisi's accounts.

11

Although E-gold accounts may be anonymous, which is hardly surprising because most financial institutions or banks do not freely disperse information about their customers and their customers' assets, there is no allegation of any effort to conceal by Legisi. Additionally, most financial transactions and payments are irreversible for obvious reasons. Thus, Count II must be dismissed.

### III.  Legisi Has Standing To Challenge The Forfeiture Of Its E-gold Accounts

Although difficult to discern, as the argument is under the Government's heading "Property Involved in Unlicensed Money Transmission," it appears that the Government is attempting to question Legisi's standing to challenge the forfeiture of the money in its accounts. Opposition at 16. Nonetheless, the Government concedes in its Opposition that "[a]t the pleading stage, a verified claim of ownership may suffice to establish standing to contest a forfeiture. *See, e.g., United States v. $148,840.00*, 485 F.Supp.2d 1254, 1258." Opposition at 17. Because *this case is at the pleading stage*, the attack on Legisi's standing must be ignored.

Dated: November 26, 2007

Respectfully Submitted,

PORTER WRIGHT MORRIS & ARTHUR

By: _/s/ William P. McGrath_
William P. McGrath, Jr.
(DC Bar No. 422160)
1919 Pennsylvania Avenue NW
Suite 500
Washington, DC 20006-3434
Telephone:    202 778-3000
Fax:              202 778-3063

THE ROTH LAW FIRM, PLLC

By: _____
Richard A. Roth
545 Fifth Avenue, Suite 960
New York, New York, 10017
Telephone:    212 542-8882
Fax:              212 542-8883

ATTORNEYS FOR CLAIMANT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Claimant Legisi Holdings LLC's Reply to Plaintiff United States of America's Opposition to Claimant's Motion to Dismiss was served this 26th day of November, 2007 via the Court's electronic filing system upon the following counsel:

>William Rakestraw Cowden
>U.S. ATTORNEY'S OFFICE
>555 Fourth Street, NW
>Washington, DC 20530
>Email: william.cowden@usdoj.gov

_____
William P. McGrath, Jr.